**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender
Indianapolis, IN

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA BANKS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1203-CR-120 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Linda E. Brown, Judge
The Honorable Steven J. Rubick, Magistrate
Cause No. 49F10-1109-CM-067417

**September 26, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Joshua Banks ("Banks") was convicted in Marion Superior Court of Class A misdemeanor patronizing a prostitute. He was sentenced to two days in the Marion County Jail, with credit for one day served and one day of good time credit, and he was fined court costs of $165. Banks appeals and argues there was insufficient evidence supporting his conviction for patronizing a prostitute.

We affirm.

**Facts and Procedural History**

On September 20, 2011, Indianapolis Detective Laura Spicer ("Detective Spicer") was posing as an undercover prostitute to investigate complaints of prostitution in the area of 1900 East Prospect Street. She was on the sidewalk in front of the Village Pantry when the driver of a vehicle parked in the lot called her over to his vehicle. Banks was a passenger in the vehicle. Spicer approached and spoke with the driver. He asked what she was doing, and as the conversation progressed, she told him she would "do either head or f**k."[1] Tr. p. 8.

Detective Spicer walked a few feet away but then returned to the vehicle to speak with the driver. With Banks still seated in the passenger seat, she again spoke with the driver through the open driver's side window about the details of the sexual services she would perform and about payment. Appellant's App. p. 16. Detective Spicer opened the rear driver-side car door and asked Banks, who

---

[1] "Head" is street terminology for fellatio, and "f**k" is street terminology for sexual intercourse. Tr. p. 9.

2

was on his cell phone, "So are you good for head" for $20, too?[2]  Tr. p. 9.  Banks "turned around, looked at [the detective], made eye contact, nodded and said, 'yeah, we're good.'"  Tr. p. 9.  Detective Spicer then signaled for other officers to approach, and they placed Banks and the driver, who had also agreed to pay $20 for fellatio, under arrest.

The State charged Banks with Class A misdemeanor patronizing a prostitute.  Following a bench trial on February 17, 2012, in Marion Superior Court, Banks was convicted and sentenced to two days incarceration, with credit for one day served and for one day of good time credit.  Banks now appeals.

**Discussion and Decision**

Banks argues that there is insufficient evidence to support his conviction for patronizing a prostitute.  In particular, Banks asserts that his response of "yeah" to a "price quote" from the detective was insufficient evidence for the trial court to reasonably conclude that Banks was agreeing to pay for fellatio. Appellant's Br. at 4-5.

In reviewing a claim regarding sufficiency of the evidence, we do not reweigh the evidence or reassess the credibility of the witnesses.  Shuger v. State, 859 N.E.2d 1226, 1236 (Ind. Ct. App. 2007) (citing Love v. State, 761 N.E.2d 806, 810 (Ind. 2002)).  Rather, we respect the trier of fact's "exclusive province to weigh conflicting evidence" and look to the evidence most favorable to the conviction and reasonable inferences drawn therefrom.  Id. (citing McHenry v.

---

[2] The court reporter incorrectly transcribed Detective Spicer's testimony as stating $22.00, while the probable cause affidavit makes it clear Detective Spicer actually stated "$20, too." Ex. Vol., Def. Ex. A.

3

State, 820 N.E.2d 124, 126 (Ind. 2005)). If there is probative evidence from which a reasonable trier of fact could have found the defendant guilt beyond a reasonable doubt, we will affirm the conviction. Id.

Under Indiana Code section 35-45-4-3, Class A misdemeanor patronizing a prostitute is:

> A person who knowingly or intentionally pays, or offers or agrees to pay, money or other property to another person:
> (1) for having engaged in, or on the understanding that the other person will engage in, sexual intercourse or deviate sexual conduct with the person . . . .

The statute does not define what it means by "agrees to pay," and our Court has not previously considered the meaning of that phrase.

In Harwell v. State, a case involving Class D felony prostitution, this court considered the meaning of "agrees to perform" in the context of the prostitution statute:[3]

> "Agreement" has a plain, and ordinary meaning: it is defined by Black's law dictionary as "a mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons."

821 N.E.2d 381, 383 (Ind. Ct. App. 2004) (quoting Black's Law Dictionary 74 (8th ed. 2004)). A simple, contract analysis is appropriate for this case, as well. To determine whether Banks "agree[d] to pay" for sexual services under the patronizing a prostitute statute, we must determine whether the evidence is sufficient to establish that he and Detective Spicer had a mutual understanding. In

---

[3] While the offense of prostitution is distinct from patronizing a prostitute, the offenses are similar, and the language involving formation of an agreement is nearly identical ("agrees to perform, sexual intercourse or deviate sexual conduct" as compared to "agrees to pay . . . another person" for "sexual intercourse or deviate sexual conduct"). See Ind. Code § 35-45-4-2.

4

determining whether a mutual understanding has been reached, an offer does not have to "be express and in precise statutory language." Williams v. State, 254 Ind. 4, 6, 256 N.E.2d 913, 914 (1970). Rather, an offer can be implied through "words and actions when taken in the context in which they occurred." See id.

In Andrews v. State, the appellant argued that a mere price quotation "does not constitute an offer to commit sexual intercourse for hire." 155 Ind. App. 599, 602, 293 N.E.2d 799, 800 (1973). This court found the argument "novel" but "misplaced" because appellant did more than merely quote the charge for her services; she also told him the place was up to him and suggested that he get a cab. Id.

On the other hand, accompanying actions can also show a lack of a mutual understanding. In Ferge v. State, for example, the affirmative act of driving away was considered as "evidence that [the defendant] did not intend to make a deal" for sexual activity. 764 N.E.2d 268, 272 (Ind. Ct. App. 2002).

In this case, Banks did more than just respond affirmatively to a price quote. His accompanying actions revealed his intent to enter an agreement with Detective Spicer; they showed he had a mutual understanding. Banks was in the passenger seat of the vehicle while the driver of the vehicle discussed Detective Spicer's sexual services with her through an open window. In addition, when Detective Spicer made an explicit offer to Banks to perform fellatio for a defined price, Banks made eye contact, nodded in agreement, and said "yeah." Tr. p. 9. Banks words and actions indicated his intent to enter an agreement with Detective

5

Spicer, and unlike in <u>Ferge</u>, there were no additional accompanying words or actions indicating a contrary intent.

For all these reasons, the trial court could reasonably infer that Banks and Spicer had a mutual understanding that Banks had agreed to pay for deviant sexual conduct. This evidence is sufficient to convict Banks of Class A misdemeanor patronizing a prostitute.

Affirmed.

VAIDIK, J., and BARNES, J., concur.