**Charles H. BROWN, Appellant–
Defendant Below,**

v.

**STATE of Indiana, Appellee–
Plaintiff Below.**

**No. 49A02–9103–CR–110 [1].**

Court of Appeals of Indiana,
Third District.

Aug. 13, 1991.

Martin E. Solomon, Solomon & Solomon, Indianapolis, for appellant-defendant below.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff below.

STATON, Judge.

Charles Brown appeals his conviction for disorderly conduct,[2] a Class B misdemeanor, alleging that his conduct at the time of

---

1. This case was assigned to this office on July 8, 1991.

2. IND CODE 35–45–1–3 (1988).

his arrest was constitutionally protected and not proscribed by the Indiana criminal code. In other words, Brown claims the evidence was not sufficient to support his conviction.

We affirm.

The evidence favorable to the verdict indicates that on May 9, 1990, Indianapolis Police Officer Douglas Cook stopped a car in which Brown was riding, acting on information that the occupants of the vehicle had been involved in a burglary. After Brown was placed under arrest for receiving stolen property, Police Officer Ronald Vest was called to take photographs of the stolen property, the crime scene, and the participants. Brown became loud and abusive toward the police officers, and threatened to kill Vest. The officers repeatedly asked Brown to "be quiet" or "quiet down," but he continued to be loud and profane. Brown's outburst attracted the attention of passing motorists and patrons from a nearby nightclub.

The review of a disorderly conduct conviction based upon speech requires this court to examine the charged events in light of the constitutional protections afforded speech. *Gilles v. State* (1988), Ind. App., 531 N.E.2d 220, *cert. denied* (1989) —— U.S. ——, 110 S.Ct. 337, 107 L.Ed.2d 325. However, we do not reweigh the evidence or judge the credibility of the witnesses when undertaking such a review. We look to the evidence most favorable to the State, along with all reasonable inferences to be drawn therefrom, to see if there is substantial evidence of probative value to support the verdict. *Clark v. State* (1990), Ind., 562 N.E.2d 11, 16.

The disorderly conduct statute provides that:

A person who recklessly, knowingly, or intentionally:

(1) engages in fighting or in tumultuous conduct;

(2) makes unreasonable noise and continues to do so after being asked to stop; or

(3) disrupts a lawful assembly of persons;

commits disorderly conduct, a Class B misdemeanor.

IC 35-45-1-3.

■ Brown now relies on *Cavazos v. State* (1983), Ind.App., 455 N.E.2d 618, to prove that his speech was not an "unreasonable noise" proscribed by the disorderly conduct statute. In *Cavazos,* our court of appeals reversed the disorderly conduct conviction of a defendant who accused the police officer arresting her brother of having a "grudge" against her brother, then called the officer an "asshole" and continued to debate the propriety of her brother's arrest. *Id.* at 619. Judge Shields concluded that the defendant's language did not fall within any of the four categories of constitutionally unprotected speech. *Id.* at 620–21. Those subjects of speech that are not constitutionally protected are obscenity, fighting words, public nuisance speech, and incitement to imminent lawless action. *Hess v. Indiana* (1973), 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303. [3]

[2] We agree with Brown's contention that, as in *Cavazos,* the conduct at issue involves the spoken word. However, we believe the State is correct in arguing that the words spoken in this case went far beyond the language used in *Cavazos.* Officer Vest testified that after he told Brown to quiet down, Brown told Vest to take off the handcuffs "so he could fight. He [Brown] stated that he wanted to kill me...." Record, p. 33. Officer Cook tes-

---

**3.** We note that Judge Shields made it clear that the resolution of the issue before her assumed, *without deciding,* that "unreasonable noise" as that term is employed in IC 35-45-1-3(2) refers solely to the foregoing categories of constitutionally unprotected speech. *Cavazos, supra,* at 620. We find this assumption valid, given that

"Indiana's disorderly conduct statute must be carefully 'construed to punish only unprotected speech and not be susceptible of an application to protected expression' under the first amendment." *Id.* at 621 (Buchanan, C.J., dissenting) (quoting *Gooding v. Wilson* (1972), 405 U.S. 518, 522, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408).

tified that Brown threatened to give Officer Vest a "Sicilian necktie," which involves slitting the throat and pulling the victim's tongue out through the neck. Record, p. 25. Brown continued to yell and curse at the officers after being told to cease.

Such insults and provocations clearly fall within the "fighting words" category of unprotected speech, in that they consisted of words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire* (1942), 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031. The thrust of the fighting words exception is "whether, under an objective standard, the words were stated as a personal insult to the hearer in language inherently likely to provoke a violent reaction." *Gilles, supra,* at 222. Brown's language readily satisfies this objective standard, and amounts to unprotected speech. *See also Stults v. State* (1975), 166 Ind.App. 461, 336 N.E.2d 669 (affirming defendant's disorderly conduct conviction for fighting words directed solely at arresting police officers after being placed into custody). The evidence is sufficient to support Brown's conviction for disorderly conduct.

The trial court is affirmed.

BUCHANAN and SULLIVAN, JJ., concur.