**Steven BORCHERT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–9210–CR–481.**

Court of Appeals of Indiana,
Third District.

Oct. 13, 1993.

Edward S. Adams, Hall & Adams, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Suzann Weber Lupton, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Appellant-defendant Steven Borchert appeals from his conviction for disorderly conduct, a Class B misdemeanor.

Borchert raises three issues for review:

(1) whether Borchert's speech was protected by either the Indiana or the United States Constitution;

(2) whether the State presented sufficient evidence to sustain Borchert's conviction of disorderly conduct; and

(3) whether the trial court erred by allowing a police officer to testify as to the volume of Borchert's speech.

The facts relevant to this appeal disclose that on February 1, 1992, Steve Borchert, and approximately twenty-five others, were involved in a protest outside the Indianapolis Women's Clinic in Indianapolis, Indiana. The protestors congregated in a public alley approximately 150 feet from the building that housed the clinic. As escorts carrying large portable radios led patients from their vehicle into the building, protesters would yell to the clinic patients.

Indianapolis Police Officer Tammy Peters, who was working at the clinic as a part-time security officer, was approached

by people inside the clinic who complained that they could hear Borchert, and he was disturbing both employees and the patients. Peters knew Borchert from previous encounters and was familiar with his voice. Borchert was heard shouting statements such as: "Mommy don't kill me. Mommy don't kill me." Peters approached Borchert, informing him that his voice could be heard inside the building and warned him to quiet down or he would be arrested. Shortly thereafter, clinic employees again approached Peters with the same complaint. Peters again went outside where she told Borchert that he was being placed under arrest. Borchert refused to recognize Peters' authority to place him under arrest, requiring Peters to call for back-up.

Borchert was charged with disorderly conduct and resisting arrest. At trial, the State requested a dismissal of the charge of resisting arrest. Subsequently, Borchert was convicted of disorderly conduct. He now appeals.

■ Borchert challenges his disorderly conduct conviction. More specifically, Borchert contends that he was engaged in constitutionally protected speech at the time of his arrest. As Borchert points out, a review of a disorderly conduct conviction based upon speech requires that this Court examine the charged events in light of the constitutional protections afforded speech. *Brown v. State* (1991), Ind.App., 576 N.E.2d 605, 606. Spoken words generally fall within the constitutional guarantee of freedom of speech; however, several categories of speech fall outside the ambit of its protection. *Gilles v. State* (1988), Ind. App., 531 N.E.2d 220, 222, *cert. denied* (1989), 493 U.S. 939, 110 S.Ct. 337, 107 L.Ed.2d 325. As this Court has previously set forth:

" 'These categories include: (a) obscenity, *see generally Miller v. California;* (1973) 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419; (b) speech in circumstances where its time, place or manner of delivery unduly interferes with privacy of the home or a similar competing interest, sometimes called 'nuisance' speech, *see e.g. Kovacs v. Cooper*, (1949) 336 U.S. 77,

69 S.Ct. 448, 93 L.Ed. 513 and *see generally* Nowak, Rotunda, Young, *Handbook on Constitutional Law* 812–17 (1978); (c) speech advocating immediate violence or similar lawless action which is likely to follow, *see generally Hess v. Indiana,* (1973) 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303; *Brandenburg v. Ohio,* (1969) 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430; and (d) 'fighting words,' personally abusive language likely to provoke a violent reaction by listeners toward the speaker, *see generally Chaplinsky v. New Hampshire,* (1942) 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031[.]' "

*Id.* at 222, *quoting, Mesarosh v. State* (1984), Ind.App., 459 N.E.2d 426, 427–428. Here, Borchert's prosecution was based upon speech constituting a public nuisance.

This Court addressed the constitutionality of Indiana's disorderly conduct statute in *Price v. State* (1992), Ind.App., 600 N.E.2d 103, and held that the prosecution of unreasonable noise which constitutes a public nuisance does not violate the First and Fourteen Amendments of the United States Constitution or the free speech provision of the Indiana Constitution. This Court noted that the United States Supreme Court has "recognized that governments have a substantial interest in protecting their citizens from unwelcome noise." *Id.* at 115, *citing, Ward v. Rock Against Racism* (1989), 491 U.S. 781, 795–796, 109 S.Ct. 2746, 2756, 105 L.Ed.2d 661, 678. Additionally, this Court recognized that the language of Indiana's Constitution "seems intended at least in part to enable the State to enact statutes to punish unreasonably loud speech." *Id.*

Borchert's contention that *Price* supports his claim that his speech was not prohibited public nuisance speech, is erroneous. In *Price*, this Court traced the history of public nuisance laws and pointed out that such laws were often targeted at punishing persons who operated places in which public disorder was encouraged and against those persons making great noise at night. *Id.* at 114. This Court, however, did not limit punishable acts of public nuisance speech to only those falling within

these limited areas. Rather, this Court looked to the reasonableness of the challenged noise to determine whether the defendant's speech constituted a public nuisance, hence, supporting the defendant's disorderly conduct conviction. *Id.* at 115.

Standing by itself, evidence of loudness does not constitute unreasonable noise. *Cavazos v. State* (1983), Ind.App., 455 N.E.2d 618, 621. Loudness may be unreasonable, but that determination must be made in the context of the surrounding circumstances.

> *Martin v. State* (1986), Ind.App., 499 N.E.2d 273, 275; *Cavazos,* 455 N.E.2d at 621.

In *Martin,* the defendant was involved in an altercation with police officers near a volleyball court in an outdoor picnic area. In sustaining the defendant's conviction for disorderly conduct, the court noted that defendant's response to the police officers' admonishments was "almost a yell," "very loud," and "louder than necessary to be heard." Thus, the Court concluded that the defendant's speech was unreasonably loud and, therefore, an unprotected nuisance. *Martin,* 499 N.E.2d at 274–275.

In the present case, despite the fact that radios were playing and that the other protestors admitted to raising their own voices, Peters testified that the clinic employees complained that they could hear Borchert's shouts inside the building 150 feet away. When Peters came outside, after being requested to do so by clinic employees, she immediately approached Borchert and warned him to quiet down because he could be heard inside the clinic. Borchert failed to heed the warning and approximately one hour later was heard shouting again by the clinic employees inside the building. As in *Martin,* there was evidence presented that Borchert utilized an unnecessarily high volume of speech; one which was unreasonable under the circumstances. Borchert's prosecution under the disorderly conduct statute did not violate his constitutional rights.

■ Borchert also challenges the sufficiency of the evidence. When reviewing a claim of insufficient evidence, this Court

neither reweighs the evidence nor judges the credibility of the witnesses. Rather, it looks only to the evidence favorable to the judgment and any reasonable inferences therefrom. If there is sufficient evidence of probative value to support a finding of guilt beyond a reasonable doubt, this Court will affirm the conviction. *Brown,* 576 N.E.2d 605 at 606.

In pertinent part, IND.CODE § 35–45–1–3(2) (1988 Ed.) provides:

> "A person who recklessly, knowingly or intentionally, ...
>
>> (2) makes unreasonable noise and continues to do so after being asked to stop; ...
>
> commits disorderly conduct, a Class B misdemeanor."

Borchert does not dispute the fact that his conduct was intentional or that Peters asked him to stop; rather, he asserts that there was insufficient evidence that he was making unreasonable noise.

Here, approximately twenty-five people, including Borchert, were demonstrating in an alley adjoining the Indianapolis Women's Clinic. Peters was approached by some of the clinic employees who complained that they could hear Borchert's shouts inside the building. Peters went outside the building where she cautioned Borchert that he could be heard inside and told him that if he did not quiet down she would have to arrest him for disorderly conduct. Approximately one hour later, Peters was again approached by clinic employees who again complained of being able to hear Borchert. Borchert was subsequently arrested.

At trial, Peters stated that Borchert was yelling very loud and could be heard inside the closed building 150 feet away. Borchert also admitted that he was yelling. This was confirmed by the testimony of another protestor who testified that immediately before Peters came out of the clinic, Borchert "raised his voice loudly." Borchert also charges that he was heard inside the clinic because the windows were opened and not because his voice was un-

reasonably loud. Testimony regarding whether or when any of the windows of the clinic may have been opened is varied. Peters, however, testified that the clinic building was a brick structure and that at the time Borchert was heard inside, the windows were closed. During rebuttal examination, Peters further explained that when she went outside the building, the clinic's employees could have possibly opened the windows to hear what was going on outside. Borchert merely requests us to reweigh the evidence, which we will not do. Any discrepancies in witness testimony were for the trier of fact to resolve; ferreting out the truth when faced with conflicting evidence and arriving at a verdict are a function of the trier of fact, not ours on appeal. *See Hilliard v. State* (1993), Ind. App., 609 N.E.2d 1167, 1169. The evidence was sufficient to support a finding beyond a reasonable doubt that Borchert was being unreasonably loud despite being asked to lower his voice.

■ Finally, Borchert argues that the trial court erred in allowing Peters to testify as to the volume of his speech. Borchert cites *Humphries v. State* (1991) Ind. App., 568 N.E.2d 1033, which states that "opinion testimony is not admissible when it is elicited from a lay witness." *Id.* at 1036. The Indiana Supreme Court, however, has concluded that a lay witness may be permitted, within the trial court's discretion, to give an opinion regarding an issue of ultimate fact.

> *Hughett v. State* (1990), Ind., 557 N.E.2d 1015, 1022; *Ferguson v. State* (1985), Ind., 478 N.E.2d 673, 674–675.

Borchert has not demonstrated an abuse of discretion.

As the State points out, error in the admission of Peters' testimony, if any, was harmless, since other competent evidence regarding the volume of Borchert's speech was admitted. Testimony revealed that Borchert could be heard by employees inside a closed building 150 feet from where Borchert was standing.

> *See Glasscock v. State* (1991), Ind.App., 576 N.E.2d 600, 604, *trans. denied* (admission of improper evidence is harmless when facts adduced from admission were also separately established by independent evidence);

> *Kimp v. State* (1989), Ind., 546 N.E.2d 1193, 1196, *trans. denied.*

Moreover, this Court notes that Peters did not state that Borchert's voice was unreasonably loud. Rather, Peters testified that Borchert was yelling "very loud." It was for the fact-finder to determine if Borchert's voice was "unreasonably loud" in the context of the surrounding circumstances. The judgment of the trial court is affirmed.

Affirmed.

STATON and RUCKER, JJ., concur.